IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CHARLES PETHE                                                                                    PLAINTIFF

V.                                                         CIVIL ACTION NO.: 4:06CV15-WAP-EMB

DAVID HENDERSON, ET AL.                                                              DEFENDANTS

## MEMORANDUM OPINION

**BEFORE THE COURT** is Corrections Corporation of America, David Henderson, Angie Woods and Jerry Parker's (hereinafter "the defendants") Motion for Summary Judgment and supporting Memorandum filed January 30, 2008. The plaintiff failed to file a response to the defendants' motion. Accordingly, the Court has reviewed defendants' submissions, the record, and the applicable law, and rules as follows:

## FACTS

The plaintiff, a prisoner in the custody of the Delta Correctional Facility ("DCF") at the time this lawsuit was filed, brings this civil action against David Henderson, former Chaplin of DCF, Angie Woods, former programs manager of DCF, and Jerry Parker, former Warden of DCF pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U. S. C. § 2000cc *et seq*., alleging religious discrimination and religious persecution because he was not provided the proper diet during the Feast of Unleavened Bread as prescribed by his Judaian-Christian faith as a member of the United Church of God.

The Complaint alleges that on February 2, 2005, the plaintiff informed Chaplain Henderson about a religious dietary need for the week of April 24 - 30, 2005, for the Feast of Unleavened Bread. Henderson informed the plaintiff that he would have to provide information from his church so it could be determined whether the Mississippi Department of Corrections

(MDOC) or CCA recognized his religion. The plaintiff provided Henderson with the requested information on March 1, 2005. This information included a letter from a minister with the plaintiff's church which indicated that the only requirement was that the plaintiff not eat anything leavened (containing yeast) during the seven days of the feast. When the plaintiff went to the dining hall for breakfast on April 24, 2005, he was told there was no religious diet tray for him. Later that day the plaintiff went to Henderson and informed him about what happened, and Henderson requested that the plaintiff provide him with another copy of the information regarding his religion. On April 25, 2005, the plaintiff wrote a letter to a compliance officer, Ms. Polk, explaining what had happened. In this letter, he complained that he was being forced to "starve," and he accused Henderson of discriminating against his and other religions, namely Muslims, Catholics and Pentecostals and any religion that was not his own. The plaintiff gave Henderson another copy of the information on April 26, 2005. When the plaintiff went to lunch the next day, there was no religious diet tray for him.

The plaintiff initiated the grievance procedure wherein he alleged he was forced to starve for a week due to his religious beliefs. In response to the plaintiff's grievance, Angie Woods indicated on a first step response form that the prison did not recognize religious diets but that it would support the plaintiff in his efforts. Woods further indicated that the canteen could be used to purchase crackers and that efforts would be made to put the plaintiff in contact with members of his religion to provide him with items that were required during the feast. On September 14, 2005, the plaintiff received a second step response from Warden Jerry Parker, who adopted the response submitted by Woods. On October 5, 2005, the plaintiff received a third step response from Commissioner Christopher Epps which acknowledged that the first step response was in error to the extent that MDOC does recognize religious diets in accordance with the guidelines set forth in Standard Operating Procedures ("SOP") but denied the plaintiff's request for relief in

any other regard.

The plaintiff attached a copy of DCF's Policy 20-102 regarding religious programs to the Complaint. With respect to religious diets the policy states:

...

B. Opportunity To Practice Your Faith

...

4. The institution recognizes that certain religious faiths impose dietary restrictions upon their members and will provide for such needs:

    a. It will be the policy of the institution to provide each inmate with the opportunity to satisfy minimum dietary requirements of their religious faith, in accordance with rules and regulations regarding special diets.

    b. Any special religious dietary needs that are not met by the existing food services program will be verified by the Chaplain in conjunction with the Assistant Warden, Programs, who will advise the Food Service Manager of the needs, in accordance with those established religions recognized by the MDOC.

...

F. Religious Holidays

1. The institution will permit and facilitate the observance of special religious holidays, consistent with security requirements.

2. Inmates may bring requests for special religious observances to the Chaplain. These requests must be submitted sixty (60) days prior to the event.

3. Upon verification that the request is consistent with usual practice of that particular religion, the Chaplain will submit a recommendation to the Assistant Warden, Programs, for the final approval of the Warden.

## **SUMMARY JUDGMENT STANDARD**

Rule 56 of the *Federal Rules of Civil Procedure* authorizes the granting of summary judgment in favor of the moving party when it is demonstrated that there exists no genuine issue of material fact precluding the granting of judgment in the movant's favor. FED. R. CIV. P. 56.

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows the non-movant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Id*.

The court construes the evidence such that the non-moving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. *Williams v. Time Warner Operations, Inc*., 98 F.3d 179, 181 (5th Cir. 1996). However, the non-movant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the non-movant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Id.*

## ANALYSIS OF THE ISSUES

In the complaint, the plaintiff alleges religious discrimination and persecution. As an initial matter, to the extent the plaintiff alleges that he was denied equal protection under the Constitution, his claim fails. Indeed, beyond his conclusory allegation that he was discriminated

against, he has failed to allege any facts sufficient to state a constitutional claim. Accordingly, any equal protection claim asserted by the plaintiff should be dismissed, and the Court will move on to the plaintiff's religious freedom claim under the Free Exercise Clause and RLUIPA.

*Free Exercise Clause*

In order to establish a violation of the free exercise clause of the First Amendment, the plaintiff must show the defendants burdened his practice of religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*, a case involving mail and marriage restrictions, the Supreme Court articulated a minimal scrutiny test for evaluating prisoners' constitutional claims. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. *Turner* also considered other factors, including the existence of alternative means for inmates to exercise their constitutional rights; the impact that accommodation would have on guards, inmates, and prison resources; and whether alternatives to the prison regulation are available at a "*de minimus* cost." *Id*. at 90-91. The policy may be struck down, on this basis, if its relationship to the government objective is "so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90.

The Court finds that on this record, there is no need to review the *Turner* factors because the defendants did not interfere with the plaintiff's freedom to practice his religion. The information provided by the plaintiff's minister indicates that the only dietary requirement for the Feast of Unleavened Bread was that the plaintiff avoid any foods containing yeast for a seven-day period. Indeed, the plaintiff consistently reported to prison officials only that his religion forbad that he eat anything containing a leavening agent during the week of the Feast. And, the plaintiff has made no allegation that he had no choice of foods other than bread during

5

the relevant period. As such, the plaintiff's allegation that he was forced to starve for seven days is unfounded. Certainly the plaintiff's minimum religious dietary requirements could have been satisfied had he simply removed any bread containing yeast from his regular meal tray. Therefore, the defendants are entitled to summary judgment on the plaintiff's free exercise claim.

*RLUIPA*

The RLUIPA prohibits a government from imposing a substantial burden on a prisoner's religious exercise, even if the burden results from a rule of general applicability, unless the burden is: (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). The prisoner bears the burden to establish the existence of a substantial burden. 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The RLUIPA does not define "substantial burden," but the Fifth Circuit has held that a government regulation places a substantial burden on a religious exercise if it pressures the prisoner to significantly modify his religious behavior and significantly violate his beliefs. *Adkins,* 393 F.3d at 570. A government regulation does not pose a substantial burden to religious exercise "if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.*

In this case, the plaintiff has failed to show or adequately allege that any prison regulation imposed a substantial burden on his exercise of religion. As pointed out above, the plaintiff provided information from his minister that clearly stated that it was only required that he abstain from eating foods containing yeast during the Feast week. The plaintiff has made no allegation herein that he significantly modified his religious behavior or significantly violated his

6

beliefs. Therefore, the defendants are entitled to summary judgment on this claim as well.

## **CONCLUSION**

Based on the foregoing, the defendants are entitled to summary judgment on the plaintiff's claims, and his complaint should be dismissed with prejudice.

This, the 29th day of September, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE